IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03386-CMA-MJW

JOHN TONEY and
VALERIE TONEY,

Plaintiff(s),

v.

BECKY KEIL and
ANDERSON & KEIL, Attorneys at Law,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. [sic]
12(b) and/or THE DOCTRINES OF ROOKER-FELDMAN, RES JUDICATA,
COLLATERAL ESTOPPEL AND PRECLUSION (Docket No. 9)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter is before this court pursuant to an Order Referring Case issued by Judge Christine M. Arguello on January 14, 2014 (Docket No. 7).

**PLAINTIFFS' ALLEGATIONS**

The operative pleading is the Plaintiffs' Amended Complaint (Docket No. 6). The pro se plaintiffs allege violations of the Fair Debt Collection Practices Act ("FDCPA") based upon alleged actions by defendants attorney Becky Keil and her law firm, Anderson & Keil, during the course of litigation commenced in December 2012 in Arapahoe County Court against plaintiff John Toney (hereinafter "Mr. Toney"). According to plaintiffs, the County Court allowed plaintiff Valerie Toney (hereinafter "Mrs. Toney") to be added as a party to the action in order to protect her interest in her

property rights.[1] That County Court action concerned a debt relating to roofing services performed in April 2010 by A&H Roofing on the plaintiffs' home. That debt has since been reduced to a judgment against Mr. Toney by the County Court on November 18, 2013.

Here, plaintiffs allege many improper actions by Ms. Keil during the course of that state court litigation, including the following: repeatedly misrepresenting the amount of the debt throughout pretrial procedures, including in the complaint, as well as during mediation and at trial; misrepresenting the terms of the contract to include attorney fees (including seeking attorney fees post-judgment);[2] providing the wrong copy of the contract to the plaintiffs; seeking irrelevant discovery (tax returns); subpoenaing confidential bank statements and cancelled checks from plaintiffs' joint credit union account without plaintiffs' consent and without giving Mr. Toney a fair opportunity to respond prior to the issuance of the subpoena; changing the scope of the bank records sought in that subpoena and misrepresenting to the County Court Judge and the

---

[1]The County Court's order states, "THE DEFENDANTS WIFE MS TONEY IS ADDED AS A DEFENDANT AT HER REQUEST HOWEVER THE COURT FINDS THAT SHE IS NOT A PARTY TO THE CONTRACT AND THE PLAITNIFF [sic] HAS HAD NO RESPONSIBILITY TO HER RELATING TO THE SUBJECT CONTRACT AND THE SUBJECT PROPERTY.. SHE IS ONLY ADDED FOR THE LIMITED PURPOSE TO ALLOW HER TO PROTECT HER INTEREST IN THE PROPERTY. SHE IS NOT A PARTY TO THE CONTRACT IN QUESTION AND THE PLAINTIFF OBJECTS TO ADDING HER AS THEY DO NOT HAVE A CLAIM AGAINST HER." (Docket No. 13-4 at 1).

[2]On March 10, 2014, however, the County Court found that pursuant to the contract upon which the case was based, and upon which the court relied in determining the outcome of trial, the plaintiff was the prevailing party, was forced to bring the action to enforce the contract, and was entitled to attorney fees as a part of the judgment and in addition to the principal amount awarded on November 18, 2013. The Court awarded the requested $1,800 in attorney fees. See infra note 8.

plaintiffs the changes made; communicating with a third party (the credit union which was served with the subpoena) in connection with the debt; representing to the County Court that Mrs. Toney was responsible for the debt by reason of *quantum meruit*; communicating with Mrs. Toney in a condescending manner, with animated language and hand motions; using harassing and abusive conduct and language toward plaintiffs, including an implication that they committed a crime, in a Starbucks parking lot in front of bystanders; repeatedly accusing Mrs. Toney in open court of doing all of Mr. Toney's legal work for him (which were false representations that Mrs. Toney committed a crime or other conduct); mocking Mrs. Toney's vision impairment and her words and mannerisms in open court; and making many other misrepresentations during trial and post-judgment.

Because of the alleged violation of their privacy rights caused by Ms. Keil's communication with the credit union, plaintiffs cannot trust and have not found a replacement financial institution. Furthermore, Mr. Toney did not emotionally support and assist Mrs. Toney when her father became ill and passed away because Mr. Toney was instead focused on drafting his motion to quash the subpoena, on the impending trial date, and on how to defend Ms. Keil's misrepresentations and manufactured documentation. Mr. Toney missed a scheduled shift on one of his jobs because of his mental exhaustion, and he could not focus on his self-employed business because of the upcoming trial date. He was overwhelmed and distressed by all of Ms. Kiel's misrepresentations and abusive conduct, including the subpoena. He resigned from a part-time job to perform legal research and present his defense to Ms. Keil's misrepresentations. This caused marital discord between the plaintiffs, such as discord

as a result Mr. Toney needing to use Mrs. Toney's computer in order to write his pleadings and perform his legal research, which caused Mrs. Toney to lose time from her own work performed on her computer.

Plaintiffs seek actual damages as well as non-economic relief for emotional distress, mental stress, public humiliation and disgrace, marital discord, loss of family time, loss of income to Mr. Toney's business, loss of income from Mr. Toney's part-time job, loss of trust in financial institution, stress and hassle of finding a new financial institution, loss of hourly wages to both plaintiffs, and loss of time for Mrs. Toney to use her own computer for money-making purposes.  In addition, the pro se plaintiffs seek attorney fees and other fees and costs.

**DEFENDANTS' MOTION TO DISMISS**

Now before the court for a report and recommendation is the Defendants' Motion to Dismiss Complaint Pursuant to F.R.C.P. [sic] and/or the Doctrines of Rooker-Feldman, Res Judicata, Collateral Estoppel and Preclusion (Docket No. 9).  The court has very carefully considered this motion (Docket No. 9), the exhibits thereto (Docket Nos. 10, 11, 12, 13, and 16), the plaintiffs' response (Docket No. 21) and affidavits (Docket No. 22), and the defendants' reply and attached exhibit (Docket No. 24).  The court has also considered applicable Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial notice of the court file and the state court record in Apollo Credit Agency Inc. v. John Toney, County Court, Arapahoe (Littleton) County, Case Number 2012C326544.  The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion to dismiss be granted.

Defendants seek dismissal of all of the plaintiffs' claim pursuant to Fed. R. Civ. P. 12(b)1) and 12(b)(6). Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. See U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. See *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. See *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. See *id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. See *id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d 1091, 1094-95 (D. Colo. 2001).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The court's

6

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. See Christy Sports, LLC v. Deer Valley Resort Co., Ltd., 555 F.3d 1188, 1192-93 (10th Cir. 2009). The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law. See Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

The court is mindful of plaintiffs' *pro se* status and accordingly reads their pleadings and filings liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in plaintiffs' use of legal terminology and proper English. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve plaintiffs of the duty to comply with various rules and procedures governing litigants and counsel or the requirements of the substantive law and, in these regards, the court will treat plaintiffs according to the same standard as counsel licensed to practice law before the bar of this court. See McNeil v. United States, 508 U.S. 106, 113 (1993); Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

Defendants assert that this court does not have subject matter jurisdiction over plaintiffs' claims based on the *Rooker-Feldman* doctrine, res judicata, and/or collateral

7

estoppel. The *Rooker-Feldman* doctrine[3] "applies to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments.'" Nikkel v. Wakefield & Assocs., Inc., 2011 WL 4479109, at *3 (D. Colo. Sept. 26, 2011) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). "It bars adjudication both of 'claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment.'" Id. (quoting PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1193 (10th Cir. 2010)). "The Tenth Circuit has also held that '*Rooker-Feldman* bars review not only of final judgments entered by state courts, but also of their interlocutory orders.'" Id. (quoting Bisbee v. McCarty, 3 Fed. App'x 819, 823 (10th Cir. Feb. 2, 2001)).

Plaintiffs assert that the underlying County Court case was not final and remained appealable to Mr. Toney at the time plaintiffs filed this action, and thus the *Rooker-Feldman* doctrine and any preclusion under state law are not applicable to their claims in this court. Therefore, they contend that the defendants' motion to dismiss should be denied in its entirety.

The *Rooker-Feldman* doctrine applies only to federal suits filed after the state proceedings become final. See D.A. Osguthorpe Family Partnership v. ASC Utah, Inc., 705 F.3d 1223, 1232 (10th Cir. 2013). But see Tal v. Hogan, 453 F.3d 1244, 1257 (10th Cir. 2006) (state condemnation proceeding need not be final in order to serve as

---

[3]The Rooker-Feldman doctrine is derived from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

8

grounds for *Rooker-Feldman* preclusion); McDonald v. J.P. Morgan Chase Bank, N.A., 2014 WL 334813 (D. Colo. Jan. 30, 2014) (Krieger, C.J.). "'Finality' in this sense, occurs when either: (i) the state's highest available appellate court has reviewed and affirmed the judgment; (ii) the state action has reached a point where neither party is seeking further action; or (iii) all federal questions in the state court proceedings have been fully resolved, leaving only matters of state law or questions of fact for resolution." McDonald, 2014 WL 334813, at *2 n.1.

Here, it is clear that this federal case was filed before the state court proceeding became "final." The County Court judgment was entered on November 18, 2013. (Docket No. 16-4; Findings of Fact and Order entered by County Court Judge A. M. Ollada).[4] Pursuant to C.R.C.P. 411(a), as amended October 10, 2013, Mr. and Mrs. Toney had 14 days after the date of entry of judgment to appeal to the district court. Instead of filing a notice of appeal, they instead filed a motion for new trial on December 2, 2013, which was denied the following day. (Docket No. 9-1 at 3, Register of Actions). Pursuant to C.R.C.P. 359(b), the time for appeal was thus extended until 21 days after disposition of the motion, so in this case, the time for appeal was extended until December 24, 2013. Plaintiffs did not file a notice of appeal in state court. Instead, they commenced the instant action in this court on December 16, 2013 (Docket No. 1), and

---

[4]Judge Ollada found, *inter alia*, that the Plaintiff had "proven its case in breach of contract by a preponderance of the evidence with damages proven in the principal amount of $1,977.28, plus interest from June 1, 2010, at 24% per annum." (Docket No. 16-4 at 3). On the Defendants' counterclaim under the FDCPA, Judge Ollada found that "the Defendants have failed to meet their burden by a preponderance of the evidence and have not proven a violation of the Federal or Colorado Debt Collection Practices Acts, and therefore Defendants are awarded no set-off nor any judgment on the counterclaim." (Docket No. 16-4 at 4).

subsequently Mr. Toney filed a post-judgment motion in state court on December 23, 2013, which was denied by the County Court on December 27, 2013.[5] In addition, on December 27, 2013, the plaintiff in the state court action filed a motion to amend judgment to award attorney fees, which was granted by the County Court on March 10, 2014.[6] The Register of Actions obtained by this court from Arapahoe County reflects that as of April 22, 2014, the Toneys have not filed a notice of appeal.

Even though this action was commenced before the state action was "final," "*Osguthorpe* teaches that this does not conclude the inquiry. In *Osguthorpe,* as in this case, the state court litigation had not concluded at the time the federal action was commenced. The 10th Circuit found that the federal court's invocation of *Rooker-Feldman* to dismiss the action was inappropriate." McDonald, 2014 WL 334813, at *3. "However, the 10th Circuit proceeded to find that it would nevertheless have been

---

[5] Judge Ollada stated in pertinent part, "As to the Defendant's request for relief pertaining to jurisdictional issues, those issues have previously been addressed. Motion for reconsideration based upon jurisdiction was previously denied and this Court does not revisit the jurisdictional issues raised. . . ."

[6] Judge Ollada stated:

The Court has reviewed the record and exhibits tendered at trial. The Court as previously stated on the record, neglected to rule on the Plaintiff's request for attorney fees in its Ruling. The Court addresses and corrects that issue here. The Court finds that pursuant to the contract upon which the case was based, and upon which the court relied in determining the outcome of trial, that the Plaitniff [sic] is the prevailing party, was forced to bring this action to enforce the contract, and is entitled to attorney fees as a part of the judgment and in addition to the principal amount awarded on November 18, 2013. The Court finds based upon the factors set out in Brody v. Hellman*, 167 P.3d 192 that attorney fees are extremely reasonable at $1800.00 which is the requested amount. $1800 is so awarded.

appropriate for the federal court to abstain from hearing the federal claims during the pendency of the state court suit by invoking the *Colorado River*[7] doctrine, which sometimes counsels a federal court to stay or dismiss a federal suit pending the resolution of a parallel state court proceeding." Id. Here, however, like in McDonald, the state court proceedings are not ongoing. If they were ongoing, this court may very well have concluded that the factors governing *Colorado River* abstention would have required this court to stay or dismiss the claims here pending the conclusion of the state court proceedings. As in McDonald, if this court were to stay or dismiss this federal action on *Colorado River* grounds until the state case was complete, "the practical effect of doing so would place the court in an appropriate circumstance to now correctly invoke the *Rooker-Feldman* doctrine." Id. at *4. "Thus, with the state proceeding having become final, invocation of the *Rooker-Feldman* doctrine would now prevent this Court from hearing [plaintiffs' FDCPA claims] . . . ." Id. This court agrees with Chief Judge Krieger in McDonald that "[a]lthough a case like *Osguthorpe* suggests that the application of *Rooker-Feldman* is dictated strictly by the status of the state court proceedings at the time of the filing of the federal action, this Court sees little justification for allowing a party to forever circumvent the *Rooker-Feldman* doctrine simply by commencing suit in federal court prior to state court proceeding reaching its conclusion." Id. Therefore, because the state action has now become final, it is appropriate at this point to invoke the *Rooker-Feldman* doctrine and dismiss the plaintiffs' claims. See id.

---

[7]See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976).

11

Although plaintiffs request an award of damages rather than a reversal of the County Court judgment, it would be impossible for this court to resolve plaintiffs' claims here without calling into question the state court judgment. See Bisbee v. McCarty, 3 Fed. App'x at 823-24 (finding plaintiff's FDCPA claim against attorney was inextricably intertwined with some aspect of the state district court's interlocutory or final decision); Ellis v. CAC Fin. Corp., 6 Fed. App'x 765 (10th Cir. Mar. 26, 2001) (FDCPA claims were inextricably intertwined with the state court judgment and barred by Rooker-Feldman). Plaintiffs' FDCPA claims here are inextricably intertwined with the state court's rulings and judgment. In fact, Mr. Toney unsuccessfully raised a FDCPA counterclaim in the state court action. In his counterclaim (see Docket No. 10-3 at 9-13), Mr. Toney raised issues now raised in this case, i.e., repeatedly not being given notice of the original debt including at mediation, being given a copy of the wrong contract, Ms. Keil not obtaining the original contract until seven months after Mr. Toney's request, Mr. Toney losing money from his business and losing time from his job because of the "bad faith lawsuit," and Ms. Keil obstructing Mr. Toney's right to a fair trial. In his motion requesting the state court to allow supplemental pleading of counterclaim (Docket No. 10-3), Mr. Toney also mentioned not being given the amount of the debt until at least four months after the lawsuit was commenced, and he complained about having "to defend himself in this action against unknown amounts **and fraudulent misrepresentations of material fact by Plaintiff's staff counsel** [Ms. Keil]" (Docket No. 10-3 at 3) (emphasis added) for which he lists examples.

In addition, in state court, Mr. Toney filed a motion to quash the subpoena

12

complained of in this action (Docket No. 11-1), which included allegations that the subpoena was being used "to harass and embarrass the Defendant and his wife . . . ." and complaints about alleged actions of Ms. Keil, including that "Plaintiff's counsel [Ms. Keil] chose to use bullying tactics . . . ."  In addition, in his state court motion for a new trial (Docket No. 13-1 at 2-10, 13-2 at 1-7), Mr. Toney also raised acts complained of in the instant case, i.e., issues regarding Ms. Keil's subpoena of credit union records, Ms. Keil's alleged "hostile encounter" with Mr. and Mrs. Toney at Starbucks, Ms. Keil's alleged repeated misrepresentation of the contract, and alleged misrepresentations of the amount of the debt including throughout the complaint and during trial.  Mrs. Toney complains in her affidavit attached to that motion that Ms. Keil accused her daily during the trial of doing Mr. Toney's legal work for him (Docket No. 13-2 at 10).

In sum, this case implicates the concerns the *Rooker-Feldman* doctrine was designed to guard against.  This court finds that the court lacks subject matter jurisdiction over plaintiffs' claims and thus recommends that the motion to dismiss should be granted.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss Complaint Pursuant to F.R.C.P. [sic] and/or the Doctrines of Rooker-Feldman, Res Judicata, Collateral Estoppel and Preclusion (Docket No. 9) be **GRANTED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District**

**Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: April 23, 2014
Denver, Colorado

s/ Michael J. Watanabe
MICHAEL J. WATANABE
United States Magistrate Judge