**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 13-cv-03386-CMA-MJW

JOHN TONEY, and
VALERIE TONEY,

      Plaintiffs,

v.

BECKY KEIL, and
ANDERSON & KEIL, Attorneys at Law,

      Defendants.

---

## ORDER AFFIRMING IN PART AND REJECTING IN PART RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

      Plaintiffs John and Valerie Toney lost a case in state court.  They have made a federal case out of the state-court loss by suing the lawyers that represented their state-court adversaries.  A number of doctrines prevent this Court from disturbing the state-court's adjudication of the Toneys' first case.  In his Report and Recommendation, Judge Watanabe thought the *Rooker-Feldman* doctrine covered all of the Toneys' claims and dismissed their case on this ground alone.

      This Court disagrees.  *Rooker-Feldman* covers only Mr. Toney's claims, but Ms. Toney's fail under two additional doctrines.  Accordingly, for slightly different reasons, this Court grants Defendants' motion to dismiss (Doc. # 9.), and adopts in part and rejects in part Judge Watanabe's Report and Recommendation (Doc. # 30).

## I.  BACKGROUND

This case began with the underlying state-court litigation in which Becky Keil and her law firm, Anderson & Keil,[1] represented a debt-collection agency, Apollo, in collecting a debt from the Toneys.  *See Apollo Credit Agency. v. Toney*, No. 2012C326544 (Arapahoe Cnty. Ct. 2012) (*Toney I*).[2]  The Court reviews that state-court litigation before considering the (overlapping) facts giving rise to this federal case.

### A.  STATE COURT LITIGATION

The state-court litigation began on December 17, 2012, when Ms. Keil filed a complaint against Mr. Toney on behalf of her client, Apollo Credit, which sought to collect an April 2010 construction debt allegedly owed by Mr. Toney.  Shortly thereafter, Mr. Toney filed counterclaims against Apollo Credit.  (Doc. # 9-1 at 1.)

As relevant here, this Court construes Mr. Toney's counterclaims as falling into three broad categories.  First, Mr. Toney alleged that Apollo violated the Fair Debt Collection Practices Act (FDCPA) by alleging with insufficient specificity the amount of the debt owed and by providing improper notice to Mr. Toney prior to filing the suit.

---

[1]  The Toneys allege that Keil was acting "by and through" her law firm.  (Doc. # 10-3, ¶ 31.) For ease of reference and because it does not affect the outcome of this case, this Court will refer to Keil and her law firm as "Keil."

[2]  As the pleadings and orders from *Toney I* are central to Plaintiffs' allegations in the instant case, this Court has examined and taken judicial notice of the county court documents.  *Accord Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005).  The relevant County Court documents can be found in Doc. ## 9-1 (Register of Actions through January 23, 2013), 10-3 (Mr. Toney's counterclaims), 11-1 (subpoena for bank records), 13-1 & 13-2 (Motion for a New Trial), 13-4 (Minute Order allowing Ms. Toney to be added as a Defendant), and 16-4 (Nov. 18, 2013 Findings of Fact and Order).  Further, the Toneys have always proceeded with their litigation *pro se,* so the Court interprets their pleadings liberally. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

Second, Mr. Toney alleged that Apollo Credit, through Ms. Keil, provided him with fraudulent paperwork related to his debt and thereby deprived him of his right to a fair trial.  Third, Mr. Toney argued that Ms. Keil should be liable for sanctions under Rule 11 of the Colorado Rules of Civil Procedure for signing and filing the complaint when she "knew, or should have known through reasonable inquiry or due diligence, that the [Apollo Credit] had not complied with applicable state and federal laws regarding debt collectors prior to filing suit . . . ."  (Doc. # 10-3 at 12.)

After Mr. Toney filed his counterclaim, the state court permitted, over Ms. Keil's objections, Ms. Toney to intervene as a defendant in the case.  The state court acknowledged that Ms. Toney was not a party to the construction contract in question but granted Ms. Toney's request to be added as a party in order to protect her property interests.  (Doc. # 13-4 at 1.)

On November 18, 2013, the state court issued its only order on the parties' claims and counterclaims.  Four aspects of that order are relevant here.  First, the court concluded that Apollo Credit was "completely within its bounds to bring suit here for breach of contract" and that Mr. Toney owed Ms. Keil's client $1977.28 plus interest. (Doc. # 16-4 at 3.)  Second, the state court concluded that Apollo complied with the provisions of the FDCPA, and was in any case protected by the good faith attempt at compliance.  Third, the court did not award judgment against Ms. Toney.  (*Id.*)  Fourth, while the court found that "the [Toneys] have failed to meet their burden . . . and have not proved a violation of the [FDCPA]" (*id.* at 4), the court inexplicably did not address

3

Mr. Toney's motion for Rule 11 sanctions—nor has it addressed sanctions in any subsequent filings.

Shortly after the state court issued this order, Mr. Toney filed a motion for a new trial, in which he referenced a "hostile encounter" with Ms. Keil at Starbucks on June 10, 2013, and argued that Ms. Keil denied him fair discovery through her misrepresentations of the debt amount and her subpoena for the Toneys' bank records. Mr. Toney challenged the state court's conclusions on the FDCPA claim, again alleging that Apollo and Ms. Keil misrepresented the debt amount during the course of the suit. The state court summarily denied this motion on December 3, 2013. (Doc. # 9-1 at 3.)

The December 3 ruling constituted the last substantive proceeding before the state trial court.[3] Colorado Rule of County Court Procedure 359(b) dictates that the Toneys had 21 days after disposition of the motion for a new trial to file an appeal, which means that the Toneys had until December 24, 2013, to appeal the adverse state-court rulings. The Toneys never took such action.

**B.   THE FEDERAL ACTION**

On December 16, 2013, the Toneys filed the instant action in federal court, alleging that Ms. Keil's attempts to collect Apollo's debt, including her conduct at the state-court trial, violated the FDCPA. (Doc. # 6.) Most of the Toney's allegations— detailed below—are identical to those raised in the state court litigation. Notably, all of these allegations relate to conduct that occurred prior to the state-court order finding for Apollo.

---

[3]  There were hearings after December 3 related to attorneys' fees matters, but they are irrelevant for determining the timing of the state-court appeal.

The Toneys' federal allegations fall into nine categories.  They include accusations that Ms. Keil: (1) never provided sufficient information about the original amount of the debt owed; (2) provided him with a Fraudulent Terms and Conditions page for paper work related to the debt; (3) improperly subpoenaed bank records; (4) requested attorney's fees in a way that was not supported by her contract; (5) falsely stated that Apollo sought to inform the Toneys of the debt;  (6) misrepresented that the Apollo contract did not tie the debt to the house; (7) mocked Ms. Toney at a Starbucks; (8) improperly accused Ms. Toney of practicing law without a license, and (9) mocked Ms. Toney during her testimony at trial.[4]

Ms. Keil moved to dismiss the Toney's claims on a number of grounds,  (Doc. # 9), and this Court referred the motion to Judge Watanabe, who recommended that this Court dismiss Plaintiffs' federal claim because it lacks jurisdiction under the *Rooker-Feldman* doctrine.

Because Judge Watanabe dismissed the case on *Rooker-Feldman* grounds alone, he did not reach Ms. Keil's alternative argument that the federal claim failed on preclusion grounds or because the Toneys had failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).

---

[4]  This is the Court's best attempt to match the rambling narrative of the federal complaint to specific allegations that the Toneys think constitute violations of federal law.  The Toneys will undoubtedly think this list is under-inclusive, but they should know that it is extremely difficult for this Court to separate the wheat from the chaff in terms of linking specific conduct to specific allegations of legal violations.   Any additional claims that the Toneys believe they have pled fail for want of sufficiently pleading violations of the law.  See also Part C of this opinion, which sets out the standard for pleading standards in this Court.

This Court agrees with Judge Watanabe that *Rooker-Feldman* bars Mr. Toney's claims.  At the same time, Ms. Toney's claims do not fail under *Rooker-Feldman*, but rather on preclusion grounds.

## II.  ANALYSIS

### A.   *ROOKER-FELDMAN* DOCTRINE

First, this Court agrees with Judge Watanabe that Mr. Toney's claims fail under *Rooker-Feldman*.  This doctrine is based on the theory "that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments." *Bisbee v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486; *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16).  Rather, "[r]eview of the state court judgment must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257." *Id.* (citing *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991)).

"[A] challenge to a judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings.  Such a claim, despite not being specifically resolved by the judgment, is, for *Rooker* purposes, 'inextricably intertwined' with the judgment." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1141 (10th Cir. 2006).

In short, this straightforward doctrine dictates that if you lose a case in state court, you have to use the state appellate process and cannot file what amounts to an appeal of the state judgment in a federal district court.

1.    <u>Mr. Toney's Claims</u>

*Rooker-Feldman* bars Mr. Toney's federal claims because they are all inextricably intertwined with final decisions made in the state court proceedings.

First, this Court agrees with Judge Watanabe that because Mr. Toney's state claims became unappealable just after he filed his federal suit, under the rubric for determining finality established by Chief Judge Krieger in *McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-cv-02749, 2014 WL 334813 (D. Colo. Jan. 30, 2014), such claims fall within *Rooker-Feldman*'s scope.

In essence, *McDonald* solves a problem created by the Tenth Circuit's contradictory precedent on what constitutes finality in a state judgment for purposes of applying *Rooker-Feldman*.  As noted above, the Toneys lost in state court, never filed a state appeal, and almost immediately filed the instant federal case attacking the state-court ruling: that is the exact scenario that the Supreme Court dictated is covered by *Rooker-Feldman*.

At the same time, there is an ambiguity in the law of the Tenth Circuit on whether *Rooker-Feldman* applies if the federal case is filed during the time that the state appellate window has yet to close.  Two authorities suggest that if the federal case is **filed** during the time that the state appellate window is still open, then even if no state appeal is filed, *Rooker-Feldman* cannot apply.  *See Bear v. Patton*, 451 F.3d 639 (10th Cir. 2006); *Guttman v. Khalsa,* 446 F.3d 1027, 1031 (10th Cir. 2006).  One later authority states, however, that it is the time of the **federal decision**—as opposed to the time of the **federal filing**—that matters: thus, even if a federal case is **filed** during the

time period where the state appellate window is still open, *Rooker-Feldman* can apply, if that window has closed and no appeal is pending at the time of the federal decision. *See Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006); *see also Lambeth v. Miller*, 363 F. App'x 565, 567 n.2 (10th Cir. 2010) (noting the tension between *Guttman* and *Tal*).

In the face of ambiguous precedent from the Tenth Circuit on whether *Rooker-Feldman* applies if a suit is filed just before the window for filing a state appeal has closed, *McDonald* creates a common-sense solution, based in reliance on the abstention doctrines, to preventing a party from "forever circumvent[ing] the *Rooker–Feldman* doctrine simply by commencing suit in federal court prior to state court proceeding reaching its conclusion." *McDonald, N.A.*, 2014 WL 334813, at *4. This Court will not reiterate *McDonald*'s analysis here and, affirming Judge Watanabe, adopts it fully as applicable to this case: if Mr. Toney disagrees with these conclusions, he will have to pursue that argument at a higher court.[5]

---

[5]  Further, this Court asks the Tenth Circuit to reconsider the correctness of unappealable-at-filing rule announced in *Guttman* and *Bear*.  The rule derives from the Tenth Circuit's interpretation of a recent Supreme Court opinion, *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, 544 U.S. 280 (2005), which states that *Rooker-Feldman*'s application is confined to cases in which "state-court losers complain[] of injuries caused by state-court judgments **rendered** before the district court proceedings commenced," *id.* at 284, or to cases in which "the losing party in state court **filed** suit in federal court **after the state proceedings ended**," *id.* at 291 (emphasis added).  *Exxon Mobil* says nothing about whether "rendered" or "ended" must mean unappealable, but the Tenth Circuit has interpreted this language that way.  *See, e.g.*, *Guttman*, 446 F.3d at 1031; *but cf. Exxon Mobil*, 544 U.S. at 291 n.7 (noting that the state-court proceeding in *Exxon Mobil* was still pending at the time of the Supreme Court's decision in that case, which leaves open the possibility that the *Exxon Mobil* exception applies to a narrower category of cases: namely, those in which there are ongoing parallel proceedings at the time the federal court considers *Rooker-Feldman*'s applicability).

There are a number of problems with the unappealable-at-filing rule.  As an initial matter, the most likely time for filing an appeal of an adverse state judgment—especially for *pro se* parties—is **right after** the state-court loss—*i.e.*, when the time for filing a state-court appeal has yet to pass.  Thus, the unappealable-at-filing rule renders *Rooker-Feldman* inapplicable to

Further, Judge Watanabe correctly determined that Mr. Toney's federal claims are inextricably intertwined with the state-court ruling because each of Mr. Toney's claims is substantially similar to his arguments in state court: namely, they relate to alleged violations of the FDCPA—the same type of allegations he is raising in this Court. *See Bisbee*, 3 F. App'x at 823-24 (finding plaintiff's FDCPA claim against attorney was inextricably intertwined with some aspect of the state district court's interlocutory or final decision); *Ellis v. CAC Fin. Corp.*, 6 F. App'x 765, 770 (10th Cir. Mar. 26, 2001) (plaintiff's FDCPA claims were inextricably intertwined with the state court judgment).[6]

---

a large number of cases to which the doctrine was presumably meant to apply.  Further, the unappealable-at-filing rule contradicts precedent from both the Supreme Court and the Tenth Circuit, which suggests finality should be determined at the time of a **decision** on an argument invoking *Rooker-Feldman*, rather than at the time of the **filing** of the federal complaint.  *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 473 n.9 (1983) (eponymous case applying *Rooker-Feldman* doctrine noting that the state court was still willing to reconsider matters decided in the state court litigation at the time the federal district court was considering its motion to dismiss on what became *Rooker-Feldman* grounds); *Tal v. Hogan*, 453 F.3d 1244, 1256 n.10 (10th Cir. 2006) (correctly interpreting *Exxon Mobil* as more narrowly precluding *Rooker-Feldman* for cases where there is ongoing "parallel state and federal litigation"); *see also Velazquez v. S. Florida Fed. Credit Union*, 546 F. App'x 854, 857 (11th Cir. 2013) (applying *Rooker-Feldman* where a state claim was appealable at the time of federal filing but not at the time of decision).  This Court urges the Tenth Circuit to clarify the ambiguities surrounding the (contradictory) finality rules it has suggested on *Rooker-Feldman* and to adopt *Tal*'s finality rule.  In the interim, *McDonald* presents a common-sense solution to prevent plaintiffs from avoiding *Rooker-Feldman* merely because they were fast enough to file their federal action within the state-court appeal window.

[6]  The Toneys object that their "claims in this federal action are based on the manner in which the Defendants (debt collection attorneys) collected—or attempted to collect—the roofing debt; not the validity of the county court judgment itself." (Doc. # 31 at 10.)  As such, their claims do not call the state judgment into question.  Moreover, they suggest that *Bisbee* and *Ellis*, on which Judge Watanabe relied, are inapplicable because they both predate *Exxon Mobil*.  The Court overrules the Toneys' objection.  While the Supreme Court's decision in *Exxon Mobil* altered the scope of *Rooker-Feldman*'s application in other respects, *see* note 6, *supra*, nothing from that opinion called into question the existing case law on the "inextricably intertwined" prong of the *Rooker-Feldman* inquiry.  Further, the Toneys **did** raise claims related to the

Thus, *Rooker-Feldman* disposes of all of Mr. Toney's claims, which must be dismissed without prejudice for want of subject matter jurisdiction.

2.   Ms. Toney's Claims

At the same time, *Rooker-Feldman* cannot apply to Ms. Toney's claims.  In *Lance v. Dennis*, 546 U.S. 459, 466 (2006), the Supreme Court reasoned that *Rooker-Feldman* is based on the theory that it is inappropriate for a federal district court to hear claims for which there is an available state-level appellate remedy.  The *Lance* Court concluded, however, that the foundation for *Rooker-Feldman* is undermined when a party does not have access to a state appellate remedy.  Thus, "[t]he *Rooker–Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *Lance*, 546 U.S. at 465-66.

Here, the state court judgment was entered only against Mr. Toney—not Ms. Toney.  (Doc. # 24 at 2.)  As such, Ms. Toney did not have the right to appeal the state judgment entered against Mr. Toney.  *Lance* requires this Court to conclude that the *Rooker-Feldman* analysis pertains only to Mr. Toney's claims.  Nevertheless, as is explained below, Ms. Toney's claims fail under preclusion—a doctrine which is similar to—yet analytically distinct from—*Rooker-Feldman. Cf. Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("*Rooker–Feldman* does not otherwise override or supplant preclusion doctrine.").

---

manner in which Defendants collected the debt: they raised counter-claims under the FDCPA. Thus, these arguments fail.

**B.**     **PRECLUSION**

1.   Standard

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, 28 U.S.C. § 1738, which directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)) (internal quotation marks omitted).

Colorado law governs the scope of the preclusion questions to be considered by this Court.  Under Colorado law, preclusion may be broken into two branches: claim preclusion and issue preclusion.  Both claim and issue preclusion are "intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Nichols v. Bd. of Cnty. Comm'rs of La Plata, Colo.*, 506 F.3d 962, 967-68 (10th Cir. 2007) (quoting *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo. 1999) (citations and internal quotation marks omitted)).

Despite their parallel purpose, issue and claim preclusion differ in standards and application: "[issue preclusion] is broader than [claim preclusion] since it applies to claims for relief different from those litigated in the first action, but narrower in that it only applies to issues actually litigated." *Rantz v. Kaufman*, 109 P.3d 132, 138-39 (Colo.

2005).  Because Mr. Toney's state court counterclaims were against Apollo rather than Ms. Keil, the Court analyzes the proceedings under issue preclusion.[7]

Issue preclusion bars relitigation of an issue if: (1) there was a final judgment on the merits in the prior proceeding; (2) the party against whom issue preclusion is sought was a party to or was in privity with a party to the prior proceeding; (3) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding; and (4) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding.  The burden lies with the party asserting preclusion.  *Nichols*, 506 F.3d at 967-68 (quoting *Bebo*, 990 P.2d at 84).

2.    Application

In the motion to dismiss, Ms. Keil argues that the Toneys' claims are barred by issue preclusion.  (Doc. # 9 at 12.)  Because the parties contest each of the four prongs described above, the Court will address each in turn.  The Court concludes that the vast majority of Ms. Toney's claims are barred by issue preclusion.

a)    Finality

In order to receive preclusive effect, the state suit must have ended with a final determination on the merits.  *See Rantz*, 109 P.3d at 141 (holding that a prior suit is not final for preclusion purposes while it is still pending on appeal).  For both claim and

---

[7] Ms. Keil was not a named party in the state suit.  While Ms. Keil was arguably in privity with Apollo because the counterclaims were based on Ms. Keil's conduct, the Court is not convinced that Ms. Toney is barred from raising claims against Ms. Keil under claim preclusion.  *See Cruz v. Benine*, 984 P.2d 1173, 1177 (Colo. 1999) ("claim preclusion only bars the petitioners from suing those respondents who were parties to the first action").  Thus, the Court examines only the issue preclusive effects of *Toney I*.

issue preclusion, "[a] final judgment is 'one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" *In re Water Rights of Elk Dance Colorado, LLC*, 139 P.3d 660, 668 (Colo. 2006) [hereinafter *Elk Dance*]. The judgment "must be 'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and *there was an opportunity for review*." *Rantz*, 109 P.3d at 141 (quoting *Carpenter v. Young By & Through Young*, 773 P.2d 561, 566 (Colo. 1989) (*en banc*)).

The judgment in the state suit is final. The Toneys argue that because the state-court decision had not reached the end of the appeal process when they filed this action, the decision is not final and may not receive preclusive effect. The Toneys misconstrue the standard: regardless of the state of affairs at the time a decision is filed, for preclusion, "judgments bec[o]me final after the period in which to perfect an appeal [has] expired and all issues litigated and decided by the prior judgments are *res judicata*." *In re Marriage of Barber*, 811 P.2d 451, 454 (Colo. Ct. App. 1991) (citing *Cavanaugh v. State*, 644 P.2d 1 (Colo.1982)).

*Toney I* has completely adjudicated the rights of the parties. The state court fully adjudicated Apollo's request for payment on the debt and Mr. Toney's FDCPA counterclaims. The state court rejected Mr. Toney's arguments for a new trial. On March 10, 2014, the state court fully adjudicated Ms. Keil's request for attorney's fees. The Toneys have not represented that they have appealed any state judgment— and the record presented does not indicate otherwise. Further, the state court

conducted a full bench trial on the merits.  Thus, the proceedings from *Toney I* should receive preclusive effect.   *See Rantz*, 109 P.3d at 141.

    b)  *Privity*

  "Privity between a party and a non-party requires both a 'substantial identity of interests' and a 'working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation.'"  *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999)); *see also Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 97 P.3d 215, 217 (Colo. App. 2003), *aff'd*, 109 P.3d 604 (Colo. 2005) ("Privity exists when there is a substantial identity of interests between a party and a non-party such that the non-party is virtually represented in litigation.") (quotation marks omitted). "A nonparty is adequately represented for preclusion purposes if the interests of the nonparty and his or her representative are aligned, and the procedure applied by the original court fairly ensured the protection of the interests of the nonparty." *Goldsworthy v. Am. Family Mut. Ins. Co.*, 209 P.3d 1108, 1116 (Colo. App. 2008) (citing *Taylor v. Sturgell*, 553 U.S. at 880, 890-91 (2008); *Hansberry v. Lee*, 311 U.S. 32, 42 (1940)).

  Moreover, "a finding of privity is simply a conclusion that something in the relationship of party and non-party justifies holding the latter to the result reached in litigation in which only the former is named." *Id.* at 1115-16 (quoting  *Pub. Serv. Co. v. Osmose Wood Preserving, Inc.,* 813 P.2d 785, 788 (Colo.App.1991)).  "[T]he determination of privity depends upon the fairness of binding [the absent party] with the result obtained in earlier proceedings in which it did not participate." *Id.* (quoting *Citizens*

*for Open Access to Sand & Tide, Inc., v. Seadrift Ass'n,* 60 Cal. App. 4th 1053, 1070 (1998)).

Ms. Toney was in privity with Mr. Toney.  First, the Court compares Ms. Toney's interest in raising claims for Ms. Keil's state court conduct with Mr. Toney's interest in the state court suit.  Ms. Toney's interests in this case are substantially the same as Mr. Toney's interests in the state suit.  Ms. Toney's federal claims seek relief under the FDCPA based upon Ms. Keil's conduct during the trial.  In the state suit, Mr. Toney sought relief under the FDCPA, among other claims, based on Apollo and Ms. Keil's conduct during the state suit.  Mr. Toney had a strong interest in litigating his state court counterclaims and motions, particularly because he also sought additional relief in state court based on those claims (namely that the state court refrain from awarding judgment on the debt).  Finally, Ms. Toney's interests were adequately represented by Mr. Toney: the record establishes that this couple worked in concert to bring their defense to Mr. Toney's liability and to raise issues about Ms. Keil's conduct and that Ms. Toney was even allowed to intervene and had the opportunity to represent her own interests. (Doc. # 13-4 at 1.)

c)      *Full and Fair Opportunity To Litigate*

"To determine whether a party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the previous proceeding, the following factors are considered: (1) whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, (2) whether the party against whom collateral estoppel is asserted had sufficient

incentive to litigate vigorously, and (3) the extent to which the issues are identical."

*Grynberg v. Ark. Okla. Gas Corp.*, 116 P.3d 1260, 1265 (Colo. App. 2005).

The Toneys had a full and fair opportunity to litigate their state-court claims.

Mr. Toney had a strong incentive because his FCDPA counterclaims were intertwined

with his argument that he was not liable for the debt.  The damages that Mr. Toney

sought in *Toney I* are substantially similar to those that the Toneys seek in this Court;

thus, Mr. Toney's incentive to litigate his counterclaims in *Toney I* is just a strong as his

incentive to continue litigating this matter.  Additionally, as far as the Court is aware,

the procedures available in Arapahoe County Court are substantially similar to those

available in this federal proceeding.

### d)      *Necessarily Decided by the State Court*

An issue raised in a subsequent proceeding is precluded if it is "identical to an

issue actually litigated and necessarily adjudicated in a prior proceeding."  *Elk Dance*,

139 P.3d at 667 (citation omitted).  Issues are identical if "the inquiry undertaken in both

cases is identical and focuses on what ordinary members of the legal profession would

have done at the time the action was taken."  *Rantz*, 109 P.3d at 139 (citations omitted).

"For an issue to be 'actually litigated,' the parties must have raised the issue in

a prior action."  *Nichols*, 506 F.3d at 968 (citing *Bebo,* 990 P.2d at 85).  "An issue is

necessarily adjudicated when a determination on that issue was necessary to a

judgment."  *Bebo*, 990 P.2d at 86 (citations omitted) (noting that because "a previous

tribunal may not have taken the care needed to adequately determine an issue that

would not affect the disposition of the case, issues that were actually litigated and

decided, but were not necessary to the final outcome of the case, are *not* subject to collateral estoppel").

As noted above, Ms. Toney's federal allegations fall into nine broad categories. They include accusations that Ms. Keil: (1) never provided sufficient information about the original amount of the debt owed; (2) provided him with a Fraudulent Terms and Conditions page for paper work related to the debt; (3) improperly subpoenaed bank records; (4) requested attorney's fees in a way that was not supported by her contract; (5) falsely stated that Apollo sought to inform the Toneys of the debt; (6) misrepresented that the Apollo contract did not tie the debt to the house; (7) mocked Ms. Toney at a Starbucks; (8) improperly accused Ms. Toney of practicing law without a license, and (9) mocked Ms. Toney during her testimony at trial.

For the reasons that follow, Items (1)-(7) are precluded because the record establishes that they were actually litigated and necessarily adjudicated in the state-court proceedings:

- **Items (1) and (2): Loan Amount and Fraudulent Documents:** The record establishes that these allegations are identical to those raised in the state court suit. *See, e.g.*, (Doc. # 10-3 at 10-11 (Mr. Toney's state counterclaims alleged that "[he] was never given any information about the original amount of the debt" and "[Apollo via Ms. Keil] provided [Mr. Toney] with a copy of a fraudulent 'Terms and Conditions' page . . . .")) Further, in denying Mr. Toney's FDCPA claim, the state court necessarily determined that Ms. Keil's representation of the debt amount and provision of the alleged "manufactured Terms and Conditions page" on behalf of her client did not constitute an FDCPA violation. (Doc. # 16-4 at 3-4.)

- **Item (3): Bank Records Subpoena:** The record establishes that Mr. Toney specifically referenced the entire course of the bank records subpoena. *See* (Doc. # 13-1 at 3.) In denying a new trial, the state court necessarily determined that this subpoena did not amount to

an "irregularity in the proceedings by which any party was prevented from having a fair trial."[8]  *See* Colo. St. Cty. Ct. R. Civ. P. 359(c)(1).

- **Item (4): Attorneys' Fees:**  The record establishes that Mr. Toney raised—and the state court overruled—Mr. Toney's objections related to this issue, finding that Ms. Keil was entitled to attorney's fees under the contract, and that "attorney fees are extremely reasonable at $1800.00 which is the requested amount."  Order at 1, *Apollo Credit Agency. v. Toney*, No. 2012C326544 (Arapahoe Cnty. Ct. Mar. 10, 2012).

- **Item (5): False Representation about the Transfer of the Debt:**  The record establishes that the state court found that "[the roofing company] called the [Toneys] and its agent spoke with Defendant John Toney on July 15, 2010, informing them they had not received payment."  ((Doc. # 16-4 at 2.)  The state court further determined that [the roofing company] made numerous other attempts to communicate with the Toneys about the debt amount.  (*Id.*)

- **Item (6): Misrepresentation of the Roofing Company Debt being Tied to the House:**  The record establishes that Mr. Toney argued Apollo and Keil "should have filed a lien or foreclosed on the property for failure to pay," rather than bringing suit in Arapahoe County for breach of contract.  (Doc. # 16-4 at 3.)  The state court necessarily decided that "although the language of the contract allows filing a lien, . . . [t]he Court does not find that the only option for [Apollo and Ms. Keil] would be to file a lien on the property."  Rather, Apollo was "completely within its bounds to bring suit here for breach of contract."  (*Id.* at 3.)

- **Item (7): Mockery at Starbucks:**  The record establishes that Mr. Toney filed a motion for a new trial, in which he referenced a "hostile encounter" with Ms. Keil at Starbucks and argued that Ms. Keil denied him fair discovery through her misrepresentations of the debt amount and her subpoena for the Toneys' bank records.  The state court summarily denied this motion on December 3, 2013.  (Doc. # 9-1 at 3.)

---

[8] Colorado State County Court Rule of Civil Procedure 359(c)(1) defines the grounds that merit a new trial to include "[a]ny irregularity in the proceedings by which any party was prevented from having a fair trial."  Rule 359(c) requires a new trial if any of the listed grounds are satisfied.  Thus, in order to deny a motion for a new trial, the state court must have determined that none of the grounds were satisfied.

At the same time, in the state court pleadings and motions, Mr. Toney did not raise the last two issues and so they were not necessarily ruled upon. Nevertheless, for the reasons that follow, even if these issues are not precluded, they fail to state a claim under the FDCPA.

## C.   FAILURE TO STATE A CLAIM

As noted above, two of Ms. Toney's allegations survive the preclusion analysis. Again, these allegations are that Ms. Keil violated the FDCPA when she: (8) improperly accused Ms. Toney of practicing law without a license, and (9) mocked Ms. Toney during her testimony at trial. However, each of these allegations fails to state an FDCPA claim.

### 1.   Rule 12(b)(6) Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to "test the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted; alterations incorporated).

In reviewing a Rule 12(b)(6) motion, a court must accept as true all the well-pleaded allegations of the complaint and construe them in the light most favorable to

the plaintiff.  *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  However, the court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

    2.   <u>Application</u>

    Both of Ms. Toney's remaining claims fail because they do not constitute violations of the FDCPA.

    First, Ms. Toney alleges that Ms. Keil violated 15 U.S.C. § 1692e(7)—which prohibits a collector from "making false representations that a **consumer** has committed a crime"—by accusing Ms. Toney of practicing law without a license.   For purposes of the FDCPA, however, "a consumer is 'any natural person obligated or allegedly obligated to pay any debt.'"  15 U.S.C. § 1692a(3).  But Ms. Toney was not obligated to pay any debt: the state judgement entered against Mr. Toney.  Thus, because this provision only applies to a "**consumer**" and Ms. Toney is not plausibly a "consumer" within the meaning of § 1692e, she therefore cannot state a claim under this provision.[9]

    Second, Ms. Toney alleges that Ms. Keil's use of condescending language at trial violates FDCPA.  Ms. Toney is wrong: the FDCPA prohibits debt collectors from

---

[9]  Although it is unclear, Ms. Toney appears to argue that Ms. Keil made Ms. Toney a "consumer" when Ms. Keil argued that Ms. Toney was responsible for paying the debt under *quantum meruit*.  (Doc. # 6 ¶ 90.)  The Court finds Ms. Toney's argument unavailing.  Ms. Keil objected to Ms. Toney's involvement in the suit, specifically sought a judgment against Mr. Toney alone, and merely made a legal argument to the **court** based upon an equitable theory.  Moreover, this was a legal argument made to the judge, not a representation directly to Ms. Toney seeking payment. *See O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011); *see also Gabriele v. American Home Mortg. Servicing*, 503 F. App'x 89, 95-96 &n.1.  The Court cannot believe that Ms. Keil's legal argument could constitute an allegation that Ms. Toney was directly liable for Mr. Toney's debt.  Therefore, at least on the facts as currently pled, Ms. Toney is not a consumer under the FDCPA.

"engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse **any person** in connection with the collection of a debt." 15 U.S.C. § 1692d (emphasis added).  At the same time, merely testy, smart-alecky, or rude language— such as what the Toneys allege Ms. Keil used—does not constitute a violation.  *See Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718 (11th Cir. 2011); *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010).  Thus, this allegation also fails to state a claim under the FDCPA.

## III.  CONCLUSION

Based on the foregoing, the vast majority of the allegations raised in the Toneys' complaint are wholly disposed of.  Mr. Toney's claims fail in their entirety under *Rooker-Feldman.*  Ms. Toney's fail under preclusion or Rule 12(b)(6).

Accordingly, for the foregoing reasons, it is hereby ORDERED that the recommendation of United States Magistrate Judge Watanabe (Doc. # 30) is ADOPTED IN PART and REJECTED IN PART.  It is ADOPTED insofar as it relates to Mr. Toney's claims.  It is REJECTED insofar as it relates to Ms. Toney's claims.  It is

FURTHER ORDERED that Defendant's Motion to Dismiss (Doc. # 9) is GRANTED.  Mr. Toney's claims are DISMISSED WITHOUT PREJUDICE in their entirety for want of subject matter jurisdiction.  All of Ms. Toney's claims are DISMISSED WITH PREJUDICE, except the claims mentioned in Part C of this order, which are DISMISSED WITHOUT PREJUDICE.

FURTHER ORDERED that this case is administratively closed pending further action from the parties.

DATED:  September 26, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge